```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


JPMORGAN CHASE BANK, N.A.,       §
                                 §
          Plaintiff,             §
                                 §
v.                               §
                                 §
OKLAHOMA ONCOLOGY &              §      CIVIL ACTION NO. H-06-0645
HEMATOLOGY, P.C. d/b/a CANCER    §
CARE ASSOCIATES, US ONCOLOGY,    §
INC., and AOR MANAGEMENT         §
COMPANY OF OKLAHOMA, INC.,       §
                                 §
          Defendants.            §
```

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Interpleader-Defendant Cancer Care Associates' Motion to Transfer Venue (Docket Entry No. 54) and Interpleader-Defendants US Oncology, Inc. and AOR Management Company of Oklahoma, Inc.'s Motion to Compel Arbitration (Docket Entry No. 47). For the reasons stated below, the Motion to Transfer Venue will be denied, and the Motion to Compel Arbitration will be granted.

### I.  Background

Interpleader-Plaintiff JPMorgan Chase Bank, N.A. ("Chase") brought this action to determine the validity of rival claims to funds deposited in one of its accounts (the "Chase Account"). The source of this dispute began in 1995 when AOR Management Company of Oklahoma, Inc. ("AOR-OK"), a wholly-owned subsidiary of US Oncology, Inc. ("USON"), entered into a Management Services

Agreement ("MSA") and a Purchase Agreement with Cancer Care Associates ("CCA").[1] Pursuant to the MSA, AOR-OK managed, for a monthly fee, the business aspects of CCA's practice, which included paying CCA's operational expenses and compensation to the CCA physician/owners.[2] As part of this arrangement, payments from third-party payors for services rendered by CCA were routed to the Chase Account, which was styled in CCA's name and managed by AOR-OK.[3] To insure that there would be sufficient liquidity to pay CCA's expenses, the parties agreed that

> [AOR-OK] may, during the Term, purchase, with recourse to [CCA] for the amount of the purchase, the accounts receivable of [CCA] arising during the previous month by transferring the amount set forth below into the [CCA] Account. . . . Although it is the intention of the parties that [AOR-OK] purchase and thereby become the owner of the accounts receivable of [CCA], in the event such purchase shall be ineffective for any reason, [CCA] is concurrently herewith granting to [AOR-OK] a security interest in the accounts receivable. . . . All collections in respect to such accounts receivable purchased by [AOR-OK] shall be received by [AOR-OK] as the agent of [CCA] and shall be endorsed to [AOR-OK] and deposited in a bank account at a bank designated by [AOR-OK].[4]

---

[1]Motion to Compel Arbitration, Docket Entry No. 47, Exhibit B, Management Services Agreement.  Article VIII, § 8.5 describes how AOR-OK was assigned the rights and obligations under this agreement.

[2]Motion to Compel Arbitration, Docket Entry No. 47, Exhibit B, Management Services Agreement, arts. IV, § 4.9 and VI.

[3]Id. art. IV, § 4.9.

[4]Id. art. VI, § 6.6.

USON and AOR-OK allege that USON advanced the funds toward payment of CCA's expenses, thereby obtaining either an ownership or a security interest in CCA's receivables.[5]

This arrangement continued until 2004 when the parties began to negotiate the terms of the MSA's termination. These negotiations were unsuccessful, and in January of 2005 CCA gave notice to AOR-OK that it considered the MSA to be illegal and therefore void.[6] AOR-OK subsequently initiated an arbitration action with the American Arbitration Association pursuant to the arbitration provisions in the MSA and Purchase Agreement.[7] CCA responded by filing a lawsuit in the District Court of Tulsa County, Oklahoma, against both AOR-OK and USON (the "Oklahoma litigation") on February 14, 2005.[8] The Tulsa District Court granted USON and AOR-OK's motion to compel arbitration on August 5, 2005. CCA then filed a mandamus petition and appeal with the Oklahoma Supreme Court. On November 28, 2005, the Oklahoma Supreme Court consolidated the mandamus petition into the appeal and issued a stay of "all matters relating to court-ordered arbitration relating to this dispute" during the pendency of the appeal.[9]

---

[5] Motion to Compel Arbitration, Docket Entry No. 47, p. 3.

[6] Id. at 4.

[7] Section 8.6 of the MSA and article XI of the Purchase Agreement contain the arbitration provisions at issue.

[8] Motion to Compel Arbitration, Docket Entry No. 47, pp. 5-6.

[9] Interpleader Defendant Oklahoma Oncology & Hematology, P.C.
(continued...)

Despite the ongoing arbitration and Oklahoma litigation, USON and AOR-OK allege that they continued to advance funds to CCA and that AOR-OK continued to manage CCA's business pursuant to the MSA.[10] In February of 2006, however, CCA allegedly began to redirect payments from its third-party payors from the Chase Account into its own separate account. CCA's attorney also contacted Chase to challenge AOR-OK and USON's authority over and access to funds in the Chase Account. Chase responded by placing a hold on withdrawals from the Chase Account, but continued to accept deposits. Upon learning of the hold on the Chase Account, counsel for AOR-OK and USON drafted a letter to CCA, copying Chase, challenging the actions taken. Based on these events Chase filed this interpleader action on February 14, 2006, and tendered the funds from the Chase Account into the court's registry.

## II. Motion to Transfer Venue

CCA moves this court to transfer venue to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a).[11] Section 1404(a) allows district courts to transfer an action to another proper venue "for the convenience of parties and witnesses" if such

---

[9](...continued)
d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, Exhibit 16.

[10]Motion to Compel Arbitration, Docket Entry No. 47, p. 6.

[11]Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Rule 1404(a) Motion to Transfer Venue, Docket Entry No. 54.

a transfer will be "in the interest of justice." 28 U.S.C. § 1404(a) (2006). "The determination of 'convenience' turns on a number of private and public factors, none of which are given dispositive weight." In re Volkswagen of America, Inc., 371 F.3d 201, 203 (5th Cir. 2004). These factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws and of the application of foreign law. Id. Because a plaintiff is generally entitled to choose the forum, the movant, CCA, bears the burden of demonstrating that transfer is appropriate. Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966); see also Peteet v. Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir. 1989).

CCA argues that the Northern District of Oklahoma is a more convenient forum because its employees and documents are located there, there is local interest in the case being tried in Oklahoma, the Northern District of Oklahoma is less congested than the Southern District of Texas, and the Oklahoma courts have more familiarity with Oklahoma law, which CCA claims will be applied to

the case.[12]  The court is not persuaded by CCA's arguments.  First, it is unclear that the employees identified by CCA would be necessary witnesses in this contract dispute.  Furthermore, it appears that as many potential witnesses and documents are available in Houston as in Oklahoma.[13]

With regard to local interest in the case, CCA argues that "this case could potentially impact the health, safety, and welfare of Oklahoma citizens."[14]  However, this action involves the validity of a contract and the competing claims to funds in the Chase Account.  The court is not persuaded that Oklahoma citizens' health, safety, and welfare are so closely related to this dispute.

CCA's argument that the Northern District of Oklahoma's familiarity with Oklahoma law warrants transfer is similarly unpersuasive.  CCA has alleged that the actions of USON and AOR-OK

---

[12]Id.  Despite arguing that the MSA is invalid, CCA also argues that the MSA's forum selection clause, which states that "the federal and state courts of Tulsa County, Oklahoma shall be the exclusive venue for any litigation" between the parties, should be given weight.  However, Chase is not a party to the MSA, and the Supreme Court has held that forum selection clauses should not be given dispositive weight.  Stewart Org., Inc. v. Ricoh Corp., et al., 108 S. Ct. 2239, 2245 (1988).

[13]JPMorgan Chase Bank's Response to Motion to Transfer Venue, Docket Entry No. 64, p. 5; US Oncology, Inc. and AOR Management Company of Oklahoma, Inc.'s Response to 1404(a) Motion to Transfer Venue, Docket Entry No. 61, p. 6.

[14]Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Rule 1404(a) Motion to Transfer Venue, Docket Entry No. 54, p. 12.

violated both state and federal laws.[15] Furthermore, the MSA states that it "shall be governed by the laws of the state of Texas."[16] It is therefore unclear that Oklahoma courts will have any distinct advantage in determining the validity of the contract and the ownership of the funds in the Chase Account.

### III. Motion to Compel Arbitration

**A. Standard of Review**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, et seq., creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 941 (1983). When deciding whether parties should be compelled to arbitrate, courts conduct a two-step inquiry. Will-Drill Resources, Inc. v. Samson Resources Co., 352 F.3d 211, 214 (5th Cir. 2003). First, the court must decide whether the parties agreed to arbitrate their dispute and, if so, whether this dispute falls within the scope of the arbitration agreement. Id. Second, the court must consider whether any federal statute or policy renders the claims nonarbitrable. Id.

---

[15]Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Rule 1404(a) Motion to Transfer Venue, Docket Entry No. 54, p. 2; Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, pp. 14-18.

[16]Motion to Compel Arbitration, Docket Entry No. 47, Exhibit B, Management Services Agreement, art. VIII, § 8.4.

**B.   Analysis**

   1.   <u>Is there a valid agreement to arbitrate between the parties?</u>

Determination of whether the parties agreed to arbitrate their dispute involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  <u>OPE Int'l LP v. Chet Morrison Contractors, Inc.</u>, 258 F.3d 443, 445 (5th Cir. 2001).  Both the MSA and the Purchase Agreement contain arbitration clauses.  The MSA states:

> The parties shall use good faith negotiation to resolve any controversy, dispute or disagreement arising out of or relating to this [MSA] or the breach of this [MSA].  Any matter not resolved by negotiation shall be submitted to binding arbitration and such arbitration shall be governed by the terms of Article XI of the Purchase Agreement, which, as it applies to the parties hereto, is incorporated herein by reference in its entirety.[17]

Article XI of the Purchase Agreement states:

> Any dispute, controversy or claim (including without limitation tort claims, requests for provisional remedies or other interim relief, and issues as to arbitrability of any matter) arising out of this Purchase Agreement, or the breach thereof, that cannot be settled through negotiation shall be settled (a) first, by the parties in good faith to settle the dispute by mediation under the Commercial Mediation Rules of the American Arbitration Association ("AAA") . . . and (b) if the controversy, claim or dispute cannot be settled by mediation, then by arbitration administered by the AAA under its Commercial Arbitration Rules . . . and

---

   [17]Motion to Compel Arbitration, Docket Entry No. 47, Exhibit B, Management Services Agreement, art. VII, § 8.6.

>     judgment on the award rendered by the arbitrator may
>     be entered in any court having jurisdiction
>     thereof.[18]

CCA argues that arbitration is not proper because no agreement to arbitrate exists between all the parties since USON and Chase were not signatories to the MSA or the Purchase Agreement.[19] However, no party has moved to compel arbitration of any claims by or against Chase. Thus, such claims have no bearing on whether the court should grant USON and AOR-OK's request that the competing claims to the interpleaded funds be arbitrated.

With regard to USON, USON and AOR-OK argue that USON is not a complete stranger to the contracts because § 8.5 of the MSA specifically contemplates that "American Oncology Resources, Inc." would succeed to all of the management rights and obligations under the MSA and would then assign and deliver all of its rights and obligations to its wholly-owned subsidiary, AOR-OK. USON and AOR-OK allege that USON was formerly known as "American Oncology Resources, Inc." and that it was therefore an integral part of the

---

[18]Motion to Compel Arbitration, Docket Entry No. 47, Exhibit A, art. XI, § 11.01.

[19]Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, p. 19. CCA also argues that USON Corporate, another distinct legal entity that CCA alleges should have been included in this interpleader action, is not a party to these agreements and, therefore, arbitration is not appropriate. Id. at 19-20. However, because USON Corporate was never added to this action, this argument is not relevant to the issue of the appropriateness of arbitration.

transaction.[20]  USON and AOR-OK also argue that USON's request for arbitration is proper because its dispute over the interpleaded funds is "substantially interdependent" and "intertwined" with the MSA.[21]  The Fifth Circuit has identified two circumstances under which a non-signatory can compel arbitration.  <u>Grigson v. Creative Artists Agency, L.L.C.</u>, 210 F.3d 524, 527 (5th Cir. 2000).  First, "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory."  <u>Id.</u> (quoting <u>MS Dealer Service Corp. v. Franklin</u>, 177 F.3d 942, 947 (11th Cir. 1999)).  Second, "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract."  <u>Id.</u> (quoting <u>MS Dealer</u>, 177 F.3d at 947).  The <u>Grigson</u> court emphasized that each case turns on its facts and that the decision to utilize equitable estoppel in this fashion is within the district court's discretion.  <u>Id.</u> at 527-28.

CCA argues that the MSA itself is invalid and that the actions

---

[20]Reply Brief in Support of Motion to Compel Arbitration, Docket Entry No. 68, p. 12.  CCA does not dispute that USON was formerly known as American Oncology Resources, Inc.  Furthermore, CCA acknowledges that USON drafted "all of the relevant documents creating and governing the parties' relationship, including the MSA."  <u>Id.</u> at 2.  In addition, CCA filed claims against both AOR-OK and USON in the Oklahoma litigation.

[21]Reply Brief in Support of Motion to Compel Arbitration, Docket Entry No. 68, p. 12.

taken by USON and AOR-OK under the MSA "put CCA out of compliance with state and federal laws."[22]  Because the ownership of the funds in the Chase Account cannot be established without examining the MSA, and because that contract contained the arbitration agreement at issue in this case, CCA must rely on the terms of the MSA to assert its claims against USON.  Thus, the first prong of the Grigson test is met.

With regard to the second prong of the Grigson test, CCA alleges that USON and AOR-OK's daily sweeps of the Chase Account violated state and federal laws.[23]  However, neither the factual nor the legal allegations asserted by CCA distinguish between the actions taken by USON and those taken by AOR-OK.  The allegations that CCA asserted against AOR-OK are inextricably intertwined with the allegations it has asserted against USON.  The court therefore concludes that USON can compel CCA to arbitrate this dispute under the valid arbitration agreement.

2. Does the parties' dispute fall within the arbitration agreement?

CCA also argues that the parties' dispute is outside the scope of the arbitration agreement because the MSA's arbitration provision does not contain language about tort claims, requests for

---

[22]Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, p. 20.

[23]Id.

provisional remedies or other interim relief, or issues as to arbitrability, as is mentioned in the Purchase Agreement.[24] Determining whether a dispute falls within the scope of an arbitration clause requires the court to characterize the arbitration clauses as "broad" or "narrow." Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998). "Broad arbitration clauses . . . embrace all disputes between the parties having a significant relationship to the contract, regardless of the label attached to the dispute." Id. Narrow arbitration clauses require arbitration only of disputes "arising out of" the contract, while broad clauses are those that cover all disputes that "relate to" or "are connected with" the contract. Id. See also Prima Paint, 87 S. Ct. at 1802-03 (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"). In determining whether the dispute in question falls within the scope of the arbitration agreement, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration."

Here, the MSA mandates arbitration for "any controversy, dispute, or disagreement arising out of or relating to this [MSA]

---

[24] Id. at 22.

or the breach of this [MSA]."[25]  The court concludes that this is a "broad" arbitration clause because it encompasses any disputes "relating to" the MSA.  CCA's allegations that the MSA is invalid and that USON and AOR-OK's actions pursuant to the MSA are illegal therefore fall within the express language of the arbitration clause.

    3.    <u>Do any federal statutes or policies render the claims nonarbitrable?</u>

CCA argues that "important and overriding public policies inherent in this case" render it inappropriate for arbitration.[26] CCA contends that the health, safety, and welfare of its patients are implicated by this action because Oklahoma and Texas do not allow corporations to practice medicine and that the actions of USON and AOR-OK under the MSA caused CCA to be in violation of these laws.[27]  CCA also argues that the MSA and actions taken thereunder violate federal Medicare and Medicaid laws.[28]

However, this case is not about the "health, welfare, and safety" of CCA's patients, but is instead a contract dispute.  No

---

[25] Motion to Compel Arbitration, Docket Entry No. 47, Exhibit B, Management Services Agreement, art. VII, § 8.6.

[26] Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, p. 14.

[27] Id. at 14-15.

[28] Id. at 15.

federal law or policy evidences a clear intent by Congress to limit this area of law to the judiciary.  In fact, disputes involving healthcare and Medicare/Medicaid statutes are routinely submitted to arbitration.  See, e.g., Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby, 183 S.W.3d 891, 895 (Tex. App. -- Austin 2006, no pet.) (finding that the FAA applied to a lawsuit where "the underlying dispute concern[ed] billings to Medicare and Medicaid"); Kroupa v. Casey, 2005 Tex. App. LEXIS 10212 (Tex. App. -- Houston [1st Dist.] 2005, no pet.) (same).  The court is not persuaded by CCA's argument that public policy makes the claim nonarbitrable.

Finally, CCA argues that the court should abstain from ruling on the motion to compel arbitration under the Colorado River doctrine until the Oklahoma Supreme Court determines the appropriateness of arbitration.[29]  In Colorado River Water

---

[29]Id. at 12.  CCA also challenges the court's jurisdiction, arguing that this is an improper interpleader action because USON and AOR-OK cannot assert a true claim to ownership of the interpleaded funds.  Id. at 7.  Under 28 U.S.C. § 1335(a), the court has jurisdiction over any civil action of interpleader filed by a party having in its custody or possession $500 or more if two or more adverse claimants of diverse citizenship are claiming or may claim to be entitled to such money, and if the plaintiff has deposited such money into the registry of the court.  This is a proper interpleader action.  There was a single account, the Chase Account, and two or more adverse parties were attempting to claim these funds.  See JPMorgan Chase Bank's Original Complaint for Interpleader, Docket Entry No. 1, p. 4.  USON and AOR-OK contend that they were and are authorized to withdraw funds from the Chase Account pursuant to the MSA and an irrevocable power of attorney executed by CCA in connection with the MSA "because (i) they own the funds collected from the accounts receivables that were and are deposited into the Chase
(continued...)

Conservation Dist. v. United States, 96 S. Ct. 1236, 1246 (1976), the Supreme Court held that federal courts may abstain from exercising their jurisdiction over a case where "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," so warrant. The Court later clarified the doctrine by stating that

> [a]bstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to State court would clearly serve an important countervailing interest.

Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927 (1983) (internal quotations omitted). Rather than prescribing a "hard and fast rule" governing when the doctrine applies, the Court has identified six factors that a district court may consider when making this determination: (1) whether the state or federal court has assumed jurisdiction over the res; (2) the relative inconvenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction

---

[29](...continued)
Account, (ii) they are entitled to be reimbursed out of the Chase Account for the monies advanced to pay [CCA's expenses] and/or (iii) they are entitled to be paid out of the Chase Account for past management fees due AOR-OK." Motion to Compel Arbitration, Docket Entry No. 47, pp. 3-4.

was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. Id. at 936-37, 941-42. See also Murphy v. Uncle Ben's, Inc., 168 F.3d 734, 738 (5th Cir. 1999). None of these factors are determinative; rather, they require "a careful balancing of the important factors as they apply in a given case, with the balance most heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 103 S. Ct. at 937.

USON and AOR-OK argue that application of these factors to this case does not warrant abstention.[30] The court agrees. First, the court currently maintains jurisdiction over the funds deposited into its registry. Second, a federal forum is not inconvenient, as

---

[30] USON and AOR-OK also argue that the Colorado River abstention doctrine is inapplicable because the Oklahoma litigation are not a "parallel proceedings." Reply Brief in Support of Motion to Compel Arbitration, Docket Entry No. 68, p. 4. USON and AOR-OK point out that Chase is not a party to the Oklahoma litigation, and CCA's conversion and conspiracy claims against Chase are not issues in that action. They also note that because arbitrability is the only issue before the Oklahoma Supreme Court, the disputed claims to the interpleaded funds are not currently being litigated in any Oklahoma proceeding. Id. "Suits are 'parallel,' for the purposes of determining whether Colorado River abstention applies, if they involve the same parties and the same issues." Diamond Offshore Co. v. A&B Builders, 302 F.3d 531, 540 (5th Cir. 2002). However, the Fifth Circuit has recognized that "it may be that there need not be in every instance a mincing insistence on precise identity of parties and issues." Brown v. Pacific Life Ins. Co., 462 F.3d 384, 395 n.7 (5th Cir. 2006) (internal quotations omitted). Because the court concludes that abstention is inappropriate, this issue need not be resolved.

explained in the court's denial of CCA's motion to transfer venue.

As to the third factor, "relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Moses H. Cone, 103 S. Ct. at 939. Also, "[a]llowing a federal court to order arbitration, even where a state court may construe an arbitration clause differently, is fully consistent with established congressional intent [to favor arbitration]." Brown v. Pacific Life Ins. Co., 462 F.3d 384, 396 (5th Cir. 2006).

Fourth, although the state court complaint was filed first, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 103 S. Ct. at 940. USON and AOR-OK argue that similar progress has been made in each court.[31] CCA argues that the issues have been briefed at length in the Oklahoma litigation and that proceeding in this court would be expensive and duplicative.[32] The Oklahoma litigation was filed in

---

[31]Reply Brief in Support of Motion to Compel Arbitration, Docket Entry No. 68, p. 6.

[32]Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, p. 13.

-17-

February of 2005, and the state trial court granted USON and AOR-OK's motion to compel arbitration less than six months later.[33]  In November of 2005 the Oklahoma Supreme Court issued a stay of court-ordered arbitration pending CCA's appeal.  No discovery had yet taken place.[34]  This action was filed in February of 2006, and all parties have provided extensive briefing to this court.  The court concludes that sufficient "progress" has not been made in state court to warrant the "exceptional circumstances" required to abstain from exercising its jurisdiction.

With regard to the fifth factor, "the presence of federal-law issues must always be a major consideration weighing against surrender."  Moses H. Cone, 103 S. Ct. at 942.  In addition to the Federal Arbitration Act, CCA alleges that USON and AOR-OK's actions violated Medicare statutes and the False Claims Act.[35]  Although state courts have concurrent jurisdiction to enforce these federal statutes, the court's "task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifi-

---

[33]Motion to Compel Arbitration, Docket Entry No. 47, pp. 5-6.

[34]US Oncology, Inc. and AOR Management Company of Oklahoma, Inc.'s Response to 1404(a) Motion to Transfer Venue, Docket Entry No. 61, p. 11.

[35]Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, pp. 15-17.

cations,'  that can suffice under Colorado River to justify the *surrender* of that jurisdiction." Id. (emphasis in original).

The final factor, whether the state court proceeding protects the rights of the party that invoked the federal jurisdiction, also weighs in favor of maintaining jurisdiction. Since Chase initiated this action in federal court and is not a party to the Oklahoma litigation, it is not certain that Chase's interests would be protected in the state court proceeding. Accordingly, the court declines to abstain under the Colorado River doctrine.

### IV.  Conclusion and Order

For the reasons stated above, the court concludes that transfer to the Northern District of Oklahoma is not warranted under 28 U.S.C. § 1404(a) and that arbitration of the claims between CCA and USON and AOR-OK is appropriate. Accordingly, CCA's Motion to Transfer Venue (Docket Entry No. 54) is **DENIED** and USON and AOR-OK's Motion to Compel Arbitration (Docket Entry No. 47) is **GRANTED**. USON and AOR-OK are **ORDERED** to commence arbitration within 30 days and provide the court with a status report on March 30, 2007, and every 30 days thereafter.

**SIGNED** at Houston, Texas, on this 26th day of February, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE