```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                    HOUSTON DIVISION
```

```
JPMORGAN CHASE BANK, N.A.,        §
                                  §
          Plaintiff,              §
                                  §
v.                                §
                                  §
OKLAHOMA ONCOLOGY &               §    CIVIL ACTION NO. H-06-0645
HEMATOLOGY, P.C. d/b/a CANCER     §
CARE ASSOCIATES, US ONCOLOGY,     §
INC., and AOR MANAGEMENT          §
COMPANY OF OKLAHOMA, INC.,        §
                                  §
          Defendants.             §
```

### MEMORANDUM OPINION AND ORDER

Pending before the court are Interpleader-Defendant Cancer Care Associates' Motions to Dismiss for Lack of Subject Matter Jurisdiction (Docket Entry No. 91) and for Limited Jurisdictional Discovery (Docket Entry No. 84). For reasons stated below, both motions will be denied.

### I. Background

Interpleader-Plaintiff JPMorgan Chase Bank, N.A. ("Chase") brought this action to determine the validity of rival claims to funds deposited in one of its accounts (the "Chase Account"). The source of this dispute began in 1995 when AOR Management Company of Oklahoma, Inc. ("AOR-OK"), a wholly-owned subsidiary of US Oncology, Inc. ("USON"), entered into a Management Services

Agreement ("MSA") and a Purchase Agreement with Cancer Care Associates ("CCA").[1]  Pursuant to the MSA, AOR-OK managed, for a monthly fee, the business aspects of CCA's practice, which included paying CCA's operational expenses and compensation to the CCA physician/owners.[2]  As part of this arrangement, payments from third-party payors for services rendered by CCA were routed to the Chase Account, which was styled in CCA's name and managed by AOR-OK.[3]  To insure that there would be sufficient liquidity to pay CCA's expenses, the parties agreed that

> [AOR-OK] may, during the Term, purchase, with recourse to [CCA] for the amount of the purchase . . . the accounts receivable of [CCA] arising during the previous month by transferring the amount set forth below into the [CCA] Account. . . . Although it is the intention of the parties that [AOR-OK] purchase and thereby become the owner of the accounts receivable of [CCA], in the event such purchase shall be ineffective for any reason, [CCA] is concurrently herewith granting to [AOR-OK] a security interest in the accounts receivable. . . . All collections in respect to such accounts receivable purchased by [AOR-OK] shall be received by [AOR-OK] as the agent of [CCA] and shall be endorsed to [AOR-OK] and deposited in a bank account at a bank designated by [AOR-OK].[4]

---

[1] Motion to Compel Arbitration, Docket Entry No. 47, Exhibit B, Management Services Agreement.  Article VIII, § 8.5 describes how AOR-OK was assigned the rights and obligations under this agreement.

[2] Motion to Compel Arbitration, Docket Entry No. 47, Exhibit B, Management Services Agreement, arts. IV, § 4.9 and VI.

[3] Id. art. IV, § 4.9.

[4] Id. art. VI, § 6.6.

USON and AOR-OK allege that USON advanced the funds toward payment of CCA's expenses, thereby obtaining either an ownership or a security interest in CCA's receivables.[5]

This arrangement continued until 2004 when the parties began to negotiate the terms of the MSA's termination. These negotiations were unsuccessful, and in January of 2005 CCA gave notice to AOR-OK that it considered the MSA to be illegal and therefore void.[6] AOR-OK subsequently initiated an arbitration action with the American Arbitration Association pursuant to the arbitration provisions in the MSA and Purchase Agreement.[7] CCA responded by filing a lawsuit in the District Court of Tulsa County, Oklahoma, against both AOR-OK and USON (the "Oklahoma litigation") on February 14, 2005.[8]

Despite the ongoing arbitration and Oklahoma litigation, USON and AOR-OK allege that funds continued to be advanced to CCA and that AOR-OK continued to manage CCA's business pursuant to the MSA.[9] In February of 2006, however, CCA allegedly began to redirect payments from its third-party payors from the Chase Account into its own separate account. CCA's attorney also

---

[5]Motion to Compel Arbitration, Docket Entry No. 47, p. 3.

[6]Id. at 4.

[7]Section 8.6 of the MSA and article XI of the Purchase Agreement contain the arbitration provisions at issue.

[8]Motion to Compel Arbitration, Docket Entry No. 47, pp. 5-6.

[9]Id. at 6.

contacted Chase to challenge AOR-OK and USON's authority over and access to funds in the Chase Account. Chase responded by placing a hold on withdrawals from the Chase Account, but continued to accept deposits. Upon learning of the hold on the Chase Account, counsel for AOR-OK and USON drafted a letter to CCA, copying Chase, challenging the actions taken. Based on these events Chase filed this interpleader action on February 14, 2006, and tendered the funds from the Chase Account into the court's registry.

## II. Analysis

Federal courts have jurisdiction over any civil action of interpleader filed by a party having in its custody or possession $500 or more if two or more adverse claimants of diverse citizenship are claiming or may claim to be entitled to such money, and if the plaintiff has deposited such money into the registry of the court. 28 U.S.C. § 1335(a). Section 1335 has been construed to require only "minimal diversity," that is, the diversity requirement is met as long as any two adverse parties are not citizens of the same state. State Farm & Casualty Co. v. Tashire, 87 S. Ct. 1199, 1203 (1967). Pursuant to 28 U.S.C. § 1332(c)(1), CCA is a citizen of Oklahoma, USON is a citizen of Delaware and Texas, and AOR-OK is a citizen of Delaware and Oklahoma.[10]

---

[10]CCA is an Oklahoma corporation located in Oklahoma. USON is a Delaware corporation located in Texas. AOR-OK is a Delaware corporation located in Oklahoma. US Oncology, Inc. and AOR Management Company of Oklahoma, Inc.'s Response to CCA's Motion to Dismiss for Subject Matter Jurisdiction, Docket Entry No. 99,

The court understands CCA to argue that the court lacks jurisdiction because USON does not have an independent claim to the interpleaded funds and, therefore, is not an adverse claimant, destroying minimal diversity.[11]  CCA argues that

> 29.  Chase's Complaint does not allege that either AOR-OK or USON actually have a claim to all or any of the interplead[ed] fund, only that AOR-OK and USON, together, 'claim an ownership interest **in at least a portion of the funds** in the Account **to the extent that (1) they are** forced to pay [CCA's] operational and practice expenses out of pocket, and (2) the funds constitute receivables purchased from [CCA]';
>
> 30.  The speculative and prospective nature of '**to the extent that** they **are** forced to pay [CCA's] operational and practice expenses out of pocket' does not constitute a claim and, in fact, belies a[n] existing claim with only the prospect of a future claim and is not a claim cognizable in this interpleader[.]"[12]

However, "[a]n interpleader action is designed to protect a stakeholder, *as such*, from the possibility of multiple claims upon a single fund.  To this end the interpleader statute and rules are liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability." In re Bohart, 743 F.2d 313, 324-25 (5th Cir. 1984) (internal citations omitted) (emphasis in original).  Section 1335(a) provides for original jurisdiction where two or more adverse, diverse claimants "are claiming or may claim to be entitled to such

---

p. 3.

[11]Motion to Dismiss for Lack of Subject Matter Jurisdiction, Docket Entry No. 91, pp. 8-10.

[12]Id. at 9.

-5-

money." 28 U.S.C. § 1334(a)(1). Interpleader is therefore available to a stakeholder "even though no action has been brought against [it] nor any formal demand made upon [it] by some or all of the potential claimants" as long as it can demonstrate that it "has been or may be subjected to adverse claims." Dunbar v. United States, 502 F.2d 506, 511 (5th Cir. 1974) (citing Tashire, 87 S. Ct. 1199). Chase must demonstrate the existence of a "colorable claim" adverse to that of CCA, id., such that it "legitimately fears multiple vexation directed against a single fund," Wausau Ins. Companies v. Gifford, 954 F.2d 1098, 1101 (5th Cir. 1992) (quoting Wright et al., Federal Practice and Procedure: Civil 2d, § 1704 (1986)). "[T]he test for dismissal is a rigorous one and if there is any foundation of plausibility to the claim federal jurisdiction exists." Evans v. Tubbe, 657 F.2d 661, 663 (5th Cir. 1981) (quoting 13 Wright & Miller, Federal Practice and Procedure, § 1350 (1969)).

USON has repeatedly claimed its own interest in the interpleaded funds. USON alleges that it, not AOR-OK, made advances to pay CCA's expenses and/or purchased CCA's receivables.[13] The court is therefore satisfied that Chase has demonstrated that USON has a "colorable claim" that creates a legitimate fear of multiple vexation against the Chase Account. Cf., Dunbar, 502 F.2d at 511 (holding that no adverse claim existed where the stakeholder

---

[13]Motion to Compel Arbitration, Docket Entry No. 47, p. 3.

sought to interplead "all absent, unknown persons having or claiming any right, title, or interest in and to the subject matter funds" and no party had come forward with a claim). Although CCA spends much energy debating the merits of USON's claim to the interpleaded funds,[14] these questions are not relevant to the court's jurisdiction. "[In a factual attack] [j]urisdiction is not dependent upon whether the claim for relief is meritorious; the federal courts lack jurisdiction only if the claims are plainly frivolous or patently without merit." Id. (internal citation omitted). The court is persuaded by the pleadings filed in this action that USON's claims are not plainly frivolous or patently without merit.

CCA also argues that AOR-OK was merely the alter-ego of USON and that USON should therefore be considered a citizen of Oklahoma.[15] CCA points the court's attention to its affirmative claims and causes of action filed in the Oklahoma litigation.[16] However, CCA has not sued USON in this action on the basis of its alter ego status. Therefore, such allegations are not relevant to the jurisdictional analysis. See Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283, 290-91 (5th Cir. 1989) (distinguishing between

---

[14] Motion to Dismiss for Lack of Subject Matter Jurisdiction, Docket Entry No. 91, p. 9, ¶¶ 31-33.

[15] Id. at 5-8.

[16] Id. at 5, n.15.

claims in which the plaintiff sued the defendant as an alter ego and claims based on the defendant's own conduct or the defendant's own counterclaims). Here, USON asserts a claim to the interpleaded funds in its own right, based on its own alleged actions. The court therefore concludes that the minimal diversity requirement of § 1335(a) is satisfied.

Finally, CCA argues that jurisdiction is lacking because after filing this lawsuit, Chase began depositing payments payable to CCA into a different account in USON's name and, therefore, the funds have not been deposited into the court's registry as required by § 1335(a).[17] It is undisputed, however, that all monies deposited into the Chase Account referenced in Chase's original petition have been deposited or are in the process of being deposited into the court's registry. CCA's allegation regarding the subsequent payments into a different account do not deprive the court of jurisdiction over the funds from the Chase Account that have been deposited according to § 1335.

Because the court has concluded that it has jurisdiction over this action, CCA's Motion for Limited Jurisdictional Discovery (Docket Entry No. 84), in which it seeks discovery "only pertaining to the legitimate existence of subject matter jurisdiction," is moot.

---

[17] Id. at 10-13.

### III.  Conclusion and Order

For the reasons stated above, the court concludes that jurisdiction is proper under 28 U.S.C. § 1335(a).  Accordingly, CCA's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket Entry No. 91) is **DENIED**, and CCA's Motion for Limited Jurisdictional Discovery (Docket Entry No. 84) is **DENIED as moot.** CCA's Motion to Stay and for Expedited Ruling (Docket Entry No. 105) is **DENIED**.  USON and AOR-OK are **ORDERED** to commence arbitration by May 15, 2007, and to provide the court with a status report on June 11, 2007, and every 30 days thereafter.

**SIGNED** at Houston, Texas, on this the 11th day of May, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE