IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A. | § | |
| | § | |
| v. | § | |
| | § | |
| OKLAHOMA ONCOLOGY & HEMATOLOGY, | § | CIVIL ACTION NO. H-06-0645 |
| P.C. d/b/a CANCER CARE | § | |
| ASSOCIATES, US ONCOLOGY, INC., | § | |
| and AOR MANAGEMENT COMPANY OF | § | |
| OKLAHOMA, INC. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are JPMorgan Chase Bank, N.A.'s ("Chase") Motion for Partial Dismissal and Brief in Support (Docket Entry No. 131) and Oklahoma Oncology & Hemotology, P.C. d/b/a Cancer Care Associates' ("CCA") request to amend its counterclaims made in its Response in Opposition to Motion for Partial Dismissal (Docket Entry No. 134) and in its Motion for Extension of Scheduling Order Deadlines, Motion for Protection and Request for Expedited Consideration (Docket Entry No. 136). For the reasons stated below, the court will grant Chase's motion as to CCA's claims for fraudulent misrepresentation and conspiracy, and dismiss the remainder of CCA's counterclaims because the court lacks subject matter jurisdiction over those claims, and deny CCA's request for leave to amend and its other motions.

## I.  <u>Factual and Procedural Background</u>

Simply stated, this case is about a bank caught in the middle of a bitter feud between two business partners.  Chase is the bank, and the two feuding business partners are CCA and AOR Management Company of Oklahoma, Inc. ("AOR-OK"), a wholly-owned subsidiary of US Oncology, Inc. ("USON").  In 1995 AOR-OK and CCA entered into a Management Services Agreement ("MSA") and a Purchase Agreement.[1] Under the MSA's terms, CCA agreed to render its medical services to patients; AOR-OK agreed to manage the business aspects of CCA's practice, which included paying CCA's operational expenses and compensation to the CCA physician-owners, in exchange for a monthly fee.[2]  To ensure that there would be sufficient liquidity to pay CCA's expenses, the parties agreed that

> [AOR-OK] may, during the Term, purchase, with recourse to [CCA] for the amount of the purchase, the accounts receivable of [CCA] arising during the previous month by transferring the amount set forth below into the [CCA] Account. . . .  Although it is

---

[1]JPMorgan Chase Bank's Original Complaint for Interpleader, Docket Entry No. 1, Exhibit A, Management Services Agreement.  The MSA was actually entered into between CCA and "Oncology and Hematology Management Partnership."  However, under the MSA's terms, "American Oncology Resources" succeeded Oncology and Hematology Management Partnership in all of its "rights and obligations under th[e] M[SA]." <u>Id.</u> § 8.5.  American Oncology Resources "then assign[ed] and deliver[ed] all of its rights and obligations to its wholly-owned subsidiary, AOR[-OK]," who "then bec[a]me the Business Manager under th[e] M[SA]." <u>Id.</u>  There is no dispute that AOR-OK is USON's wholly owned subsidiary or that the "American Oncology Resources" mentioned in the MSA is now USON.

[2]JPMorgan Chase Bank's Original Complaint for Interpleader, Docket Entry No. 1, Exhibit A, Management Services Agreement, arts. IV, § 4.9 and VI.

-2-

the intention of the parties that [AOR-OK] purchase
and thereby become the owner of the accounts
receivable of [CCA], in the event such purchase
shall be ineffective for any reason, [CCA] is
concurrently herewith granting to [AOR-OK] a
security interest in the accounts receivable. . . .
All collections in respect to such accounts
receivable purchased by [AOR-OK] shall be received
by [AOR-OK] as the agent of [CCA] and shall be
endorsed to [AOR-OK] and deposited in a bank account
at a bank designated by [AOR-OK].[3]

As part of their arrangement CCA also executed an
"irrevocable" power of attorney, naming AOR-OK as its "exclusive
true and lawful agent and attorney-in-fact."[4]  The power of
attorney gave AOR-OK the power to open an account in CCA's name,
and to collect, receive, and manage the receivables in that
account.  If AOR-OK purchased CCA's receivables as provided for in
the MSA, the power of attorney granted AOR-OK the power to collect
and receive all purchased receivables and to deposit those
receivables into an account selected by AOR-OK and maintained in
AOR-OK's name.[5]

On September 25, 2002, AOR-OK opened an account with Chase in
CCA's name ("the Chase account") and managed that account for CCA
as CCA's agent and attorney-in-fact.[6]  Chase allowed AOR-OK to open

---

[3]Id. art. VI, § 6.6.

[4]JPMorgan Chase Bank's Original Complaint for Interpleader,
Docket Entry No. 1, Exhibit C, Power of Attorney.

[5]Id.

[6]JPMorgan Chase Bank's Original Complaint for Interpleader,
Docket Entry No. 1, ¶¶ 8-10; id., Exhibit B, Commercial & Fiduciary
Signature Card.

the account based on the MSA and the CCA-executed power of attorney.[7]  The Chase account received instruments payable to CCA for medical services rendered by CCA-physicians.[8]

The trouble underlying this action began in 2004, when USON, AOR-OK, and CCA began negotiating for the MSA's termination.  That effort proved as contentious as it was unsuccessful, and in January of 2005 CCA notified AOR-OK that it regarded the MSA as invalid.[9] In an effort to resolve the parties' differences, AOR-OK filed an arbitration action as provided for in the MSA and Purchase Agreement.[10]

Instead of proceeding to arbitration, however, CCA filed an action for declaratory judgment against both AOR-OK and USON in an Oklahoma state court seeking to have both the MSA and the power of attorney declared invalid and, thus, unenforceable.  CCA also raised several claim against AOR-OK and USON for conversion, fraud, and breach of fiduciary duty, among others.[11]  In response, AOR-OK

---

[7]See JPMorgan Chase Bank's Original Complaint for Interpleader, Docket Entry No. 1, ¶¶ 9-10.

[8]See Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, p. 19; Motion to Compel Arbitration, Docket Entry No. 47, Exhibit F, Affidavit of Zach Varughese ¶ 6.

[9]Motion to Compel Arbitration, Docket Entry No. 47, pp. 4-5.

[10]Id. at 5.

[11]Reply Brief in Support of Motion to Compel, Docket Entry No. 47, Exhibit 1, CCA's Amended Petition pp. 7-13, 15-26, Oklahoma Oncology & Hematology PC, d/b/a Cancer Care Associates v. US Oncology Inc., No. CJ-2005-929 (D. Tulsa County, Okla. filed Feb. 14, 2005).

filed a motion to compel arbitration, which the state court granted.[12]   CCA appealed this decision to the Oklahoma Supreme Court, which, on November 28, 2005, stayed the arbitration pending the court's resolution of CCA's appeal.[13]

While the state court action and potential arbitration were pending, CCA allegedly discovered that at some point after AOR-OK had opened the Chase account, AOR-OK and USON had directed Chase to divert the proceeds of the Chase account into an account held and controlled by USON Corporate, Inc. ("the USON account").[14] According to AOR-OK and USON, Chase's actions were permissible because both AOR-OK and USON had obtained either an ownership or a security interest in CCA's receivables by advancing funds toward the payment of CCA's expenses, which, under the terms of the CCA-executed power of attorney, authorized AOR-OK to divert funds from the Chase account into the USON account.[15]   CCA alleges that Chase did not notify CCA of these transactions; instead, Chase sent all

---

[12]Motion to Compel Arbitration, Docket Entry No. 47, p. 6; see also Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, Exhibit 16.

[13]Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, Exhibit 16.

[14]See Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, pp. 19-20.

[15]See Motion to Compel Arbitration, Docket Entry No. 47, pp. 3-4.

statements regarding the transactions in the Chase account to USON.[16]

After learning of Chase's diversion of the Chase account proceeds, CCA advised Chase that neither AOR-OK nor USON owned or had an interest in the Chase account proceeds, and lacked authority to direct Chase to divert those proceeds from the Chase account into the USON account.[17]  CCA also directed Chase to cease diverting deposits from the Chase account into the USON account.[18]  AOR-OK and USON disputed CCA's assertions and reasserted their rights to the proceeds of the Chase account.[19]  Based on the notice from CCA, and a later corporate resolution from CCA purporting to revoke AOR-OK's

---

[16]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, p. 19.

[17]Id. at 19-20; JPMorgan Chase Bank's Original Complaint for Interpleader, Docket Entry No. 1, ¶ 11.

[18]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, pp. 19-20; JPMorgan Chase Bank's Original Complaint for Interpleader, Docket Entry No. 1, ¶ 11.

[19]JPMorgan Chase Bank's Original Complaint for Interpleader, Docket Entry No. 1, ¶ 13; see also Motion to Compel Arbitration, Docket Entry No. 47, pp. 3-4 ("[P]ursuant to the terms of the MSA and an irrevocable power of attorney executed by CCA in connection with the MSA, [USON]/AOR-OK were and are authorized to withdraw monies deposited into the Chase Account because (i) they own the funds collected from the accounts receivables that were and are deposited into the Chase Account, (ii) they are entitled to be reimbursed out of the Chase Account for the monies advanced to pay CCA's Office and New PC Expenses, and/or (iii) they are entitled to be paid out of the Chase Account for past due management fees due AOR-OK.").

-6-

power of attorney, Chase placed a hold on the Chase account and refused to allow any further withdrawals from the account.[20] Faced with competing claims over the same funds, Chase initiated this interpleader action on February 27, 2006, naming CCA, AOR-OK, and USON as interpleader defendants, and deposited the disputed funds from the Chase account into the court's registry.[21]

CCA alleges, however, that even though Chase had placed a hold on the Chase account, Chase continued diverting CCA's instruments to a USON account held with Chase.  CCA alleges that in February of 2006, one of AOR-OK's agents falsely represented himself as an agent of CCA and directed CCA's payors to send payments for CCA's medical services to the USON account, and that Chase deposited those instruments into the USON account.[22]  CCA sent Chase a letter on July 10, 2006, regarding this diversion of allegedly CCA-owned funds to the USON account, and notified Chase that CCA regarded the diverted instruments as property of CCA, and that USON had no right to those funds.[23]

---

[20]Id. ¶ 12.

[21]Id.

[22]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, p. 21.

[23]Id.; Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Amended Answer, Affirmative Defenses and Counterclaim, Docket Entry No. 66, Exhibit 2, Letter from Lana Jeanne Tyree, Attorney for CCA, to James M. Meredith, Vice-President & Assistant General Counsel of JPMorgan Chase Legal Department.

On August 17, 2006, interpleader-defendants USON and AOR-OK filed a motion to compel arbitration.  USON and AOR-OK argued that they and CCA should be ordered to submit to arbitration because the MSA and the Purchase Agreement would determine which interpleader-defendant had the superior interest to the Chase account proceeds, and both of those contracts contained broad arbitration clauses that encompassed each party's claims.[24]  CCA responded that arbitration was not proper because the MSA was invalid and because AOR-OK and USON could not establish ownership over the funds as a matter of law.[25]  CCA also filed two counterclaims against Chase -- one for conversion under the Texas Uniform Commercial Code ("Texas UCC") and one for conspiracy[26] -- and later obtained leave of court to raise six additional counterclaims against Chase for "failure to exercise ordinary care and act in good faith," negligence, breach of fiduciary duty, tortious interference with business relationships, money had and received, and fraud.[27]

---

[24]Motion to Compel Arbitration, Docket Entry No. 47, pp. 1, 10-12.

[25]Interpleader Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion to Compel Arbitration, Docket Entry No. 60, pp. 7-12.

[26]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Amended Answer, Affirmative Defenses and Counterclaim, Docket Entry No. 66, pp. 22-24.

[27]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, pp. 24-28.

The court granted AOR-OK and USON's Motion to Compel Arbitration and ordered the parties to submit to arbitration. The court agreed with AOR-OK and USON that the parties must arbitrate the issue of who owned the proceeds to the Chase account because that issue fell within the scope of the MSA's arbitration clause. The court concluded that the two issues raised by CCA -- the validity of the MSA and whether AOR-OK and USON could assert a valid claim of ownership to the Chase account proceeds -- were within the scope of the parties' arbitration agreement and must be decided at arbitration.[28]

After the court issued its order, CCA moved to stay the arbitration proceedings[29] and filed a Motion to Dismiss challenging this court's interpleader jurisdiction.[30]  Pending a ruling on the motion to dismiss the court granted CCA's motion to stay arbitration.[31]  The court later denied CCA's motion to dismiss, concluding instead that interpleader jurisdiction was proper because the parties were "minimally diverse" for purposes of interpleader jurisdiction, and that both AOR-OK and USON had

---

[28]Memorandum Opinion and Order granting Motion to Compel Arbitration, Docket Entry No. 87, pp. 10-13.

[29]Motion to Stay and for Expedited Ruling, Docket Entry No. 90.

[30]Motion to Dismiss for Lack of Subject Matter Jurisdiction, Docket Entry No. 91.

[31]Order granting motion to stay arbitration, Docket Entry No. 95.

asserted their own colorable claim to the Chase account proceeds.[32]
The court then lifted the stay of arbitration, ordered CCA, AOR-OK,
and USON to submit to arbitration and to file status reports with
the court every thirty days detailing the progression of the
arbitration.[33]

As of the parties' last status report, filed on January 31,
2008, an arbitrator has been appointed, a scheduling order entered,
and a final arbitration hearing date set for December 15, 2008.[34]
Moreover, according to the report, the state court action dealing
with the parties' claims concerning the validity of the MSA
generally and ownership of CCA's receivables generally, was also
proceeding.[35]   Shortly after this court ordered the parties to
submit to arbitration as to the Chase account proceeds, the
Oklahoma Supreme Court decided CCA's appeal of the state court's
prior order compelling the parties to arbitrate CCA's state court
claims.   The court reversed the state court's order compelling
arbitration, and remanded the action so that the state court could
hold an evidentiary hearing to determine, among other things,

---

[32]Memorandum Opinion and Order denying Motion to Dismiss for
Lack of Subject Matter Jurisdiction, Docket Entry No. 107, pp. 4,
6-8.

[33]Id. at 9.

[34]Joint Status Report of January 31, 2008, Docket Entry
No. 122, ¶¶ 4-5.

[35]Id. ¶¶ 4, 6.

whether CCA, AOR-OK, and USON's arbitration agreement is valid, and, if so, which of their claims were subject to arbitration, if any.[36]  As of September 2007, the parties to that action had entered a scheduling order.[37]  But according to the state court's docket sheet, no decision has been reached as to the preliminary issues before it.[38]

## II.  <u>Standards of Review</u>

Under Federal Rule of Civil Procedure 12(b)(1) the court may dismiss a claim for lack of subject matter jurisdiction <u>sua sponte</u>. <u>See</u> <u>Urban Developers LLC v. City of Jackson, Miss.</u>, 468 F.3d 281, 292 (5th Cir. 2006).  In deciding a Rule 12(b)(1) motion, the court may look either to CCA's amended counterclaims alone or to the counterclaims "supplemented by undisputed facts evidenced in the record."  <u>Ynclan v. Dep't of Air Force</u>, 943 F.2d 1388, 1390 (5th Cir. 1991).  Moreover, because the Rule 12(b)(1) standard "permits the court to consider a broader range of materials in resolving [a

---

[36]<u>Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc.</u>, 160 P.3d 936, 950 (Okla. 2007).

[37]Joint Status Report of January 31, 2008, Docket Entry No. 122, ¶ 6.

[38]<u>See</u> <u>Oklahoma Oncology & Hematology PC, d/b/a Cancer Care Associates v. US Oncology Inc.</u>, No. CJ-2005-929 (D. Tulsa County, Okla. filed Feb. 14, 2005), <u>available at</u> http://www.oscn.net/applications/oscn/casesearch.asp (last visited August 22, 2008) (under the heading "1. Select the Database you wish to search" select "Tulsa County"; then, in the field marked "Enter Case Number," enter case number "CJ-2005-929"; then either strike the "Enter" key or click on the "Execute Search" button).

Rule 12(b)(1)] motion" than does the Rule (12)(b)(6) standard, Williams v. Wynne, 533 F.3d 360, 365 n.2 (5th Cir. 2008), the court may also consider matters of public record. Cf. Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a [Rule] 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").

A motion to dismiss for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) tests the formal sufficiency of the pleadings and is "appropriate when a [party] attacks [a counterclaim] because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S.Ct. 2665 (2002). The court must accept CCA's factual allegations as true, view them in the light most favorable to CCA, and draw all reasonable inferences in CCA's favor. Id. To avoid dismissal a claimant such as CCA must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). Pleadings must provide "more than labels and conclusions." Id. at 1965. "Formulaic recitation of the elements of a cause of action will not do." Id. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

### III.  Analysis

CCA's counterclaims against Chase fall into two categories: those arising out of Chase's diversion or "sweeps" of the Chase

account proceeds into the USON account, which occurred before, and gave rise to, this interpleader action ("pre-interpleader claims");[39] and those arising out of Chase's diversion of alleged CCA-owned instruments to the USON account, which occurred after Chase filed its interpleader action ("post-interpleader claims").[40] CCA's pre-interpleader claims consist of claims for conversion, failure to exercise ordinary care and act in good faith, negligence, money had and received, and conspiracy.[41]  CCA's post-interpleader claims consist of claims for conversion, failure to exercise ordinary care and act in good faith, negligence, breach of fiduciary duty, tortious interference with business relationships ("tortious interference with existing contracts"[42]), money had and

---

[39]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, ¶¶ 8-9 at p. 19.

[40]Id. ¶¶ 13-19 at pp. 21-23.

[41]Id. ¶ 22 at p. 23 (conversion), ¶ 29 at p. 24 (failure to exercise ordinary care and act in good-faith), ¶ 34 at p. 25 (negligence), ¶ 46 at p. 27 (money had and received), ¶ 56 at p. 29 (conspiracy).

[42]Although CCA titled its claim as one for "tortious interference with business relationships," the court construes the claim as one for tortious interference with existing contracts. Under Texas law "tortious interference with business relationships" is divisible into two different but related torts:  tortious interference with existing contracts, and tortious interference of prospective contracts.  See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689 (Tex. 1989).  In its allegations, CCA cites only existing contracts as being impacted by Chase's post-interpleader conduct. Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, ¶¶ 42-43 at pp. 26-27.

received, fraud (by both misrepresentation and omission[43]), and conspiracy.[44]

Chase has moved to dismiss all of CCA's claims, except for CCA's claims for conversion and money had and received.[45]  However, after reviewing CCA's counterclaims, the law underlying those claims, and the record as a whole, the court has determined that all of CCA's claims will be dismissed.  CCA's pre- and post-interpleader claims for conversion, failure to exercise ordinary

---

[43]In its counterclaim, CCA alleged that Chase committed fraud when it "falsely represented that by its interpleader action it would continue to pay all funds payable to CCA into the registry of the Court," Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, ¶ 48 at p. 27; and when "Chase also intentionally concealed from CCA the fact that it was receiving checks made payable to CCA, but depositing said checks into an account owned by USON or USON-CORP," id. ¶ 49 at p. 28.  Texas recognizes two different types of fraud, one for fraudulent misrepresentation, see Ernst & Young v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 1998); and one for fraud by omission, see Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001).  CCA's former claim is one for fraudulent misrepresentation because it arises out of Chase's alleged fraudulent representations; the latter claim is one for fraud by omission because it arises out of Chase's alleged failure to provide information to CCA.

[44]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, ¶ 23 at p. 23 (conversion), ¶ 30 at p. 25 (failure to exercise ordinary care and act in good faith), ¶ 34 at p. 25 (negligence), ¶ 38 at p. 26 (breach of fiduciary duty), ¶¶ 42-43 at pp. 26-27 (tortious interference with business relationships), ¶¶ 45-46 at p. 27 (money had and received), ¶ 48 at p. 28 (fraudulent misrepresentation), ¶ 49 at p. 28 (fraud by omission), ¶ 57 at p. 29 (conspiracy).

[45]See JPMorgan Chase Bank, N.A.'s Motion for Partial Dismissal and Brief in Support, Docket Entry No. 131, pp. 2-3, 9 n.32.

care and act in good faith, negligence, money had and received, tortious interference with existing contracts, breach of fiduciary, and fraud by omission will be dismissed for lack of subject matter jurisdiction because they are not ripe.  CCA's only two remaining claims -- fraudulent misrepresentation and conspiracy -- will be dismissed for failure to state a claim upon which relief can be granted.

**A.   Ripeness**

Although not (expressly) raised by Chase,[46] this court has an independent obligation to ensure that questions brought before it are ripe "even if neither party raised the issue."  Urban Developers LLC, 468 F.3d at 292.  The ripeness doctrine is rooted in Article III of the Constitution, which limits the jurisdiction of federal courts to actual "cases" and "controversies."  United Transp. Union v. Foster, 205 F.3d 851, 857 (5th Cir. 2000) (citing U.S. Const. art. III, § 2).  "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative."  Shields v. Norton, 289 F.3d 832, 835 (5th Cir. 2002).  Thus, "ripeness is a constitutional prerequisite to the

---

[46]In dismissing CCA's claims for lack of ripeness, the court is essentially granting Chase the relief it sought in its Motion for Abatement Pending Resolution of Defendants' Arbitration Claims (Docket Entry No. 108), but which the court denied (Docket Entry No. 123).  The court's denial of Chase's motion did not eliminate the court's independent obligation to continue to review its own jurisdiction.  See Urban Developers LLC, 468 F.3d at 292.

exercise of jurisdiction." <u>Id.</u>  The purpose of the ripeness doctrine is to "prevent[] federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." <u>National Advertising Co. v. City of Miami</u>, 402 F.3d 1335, 1339 (11th Cir. 2005). Whether an issue is ripe for judicial review depends on (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." <u>Anderson v. Sch. Bd. of Madison County</u>, 517 F.3d 292, 296 (5th Cir. 2008) (internal quotation marks omitted).

1.  <u>The Fitness of the Issues for Judicial Decision</u>

Generally, an issue is not fit for decision "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." <u>Monk v. Houston</u>, 340 F.3d 279, 282 (5th Cir. 2003) (internal quotation marks omitted).  In other words, "when resolution of an issue turns on whether there are nebulous future events so contingent in nature that there is no certainty they will ever occur, the case is not ripe for adjudication." <u>Thomas v. City of New York</u>, 143 F.3d 31, 34 (2d Cir. 1998) (internal quotation marks omitted).  It is well established that an issue rests on nebulous future events, and is thus unfit for judicial decision, when it turns even partially on the outcome of litigation pending in another forum.  <u>See, e.g.</u>, <u>Jennings v. Auto Meter Prod., Inc.</u>, 495 F.3d 466, 476-77 (7th Cir.

2007); AT&T Corp. v. FCC, 349 F.3d 692, 700-02 (D.C. Cir. 2003); Lincoln House v. Dupre, 903 F.2d 845, 847-48 (1st Cir. 1990); A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 932-33 (4th Cir. 1977). Accordingly, CCA's pre- and post-interpleader claims for conversion, failure to exercise ordinary care and act in good faith, negligence, breach of fiduciary duty, money had and received, tortious interference with existing contracts, and fraud by omission are all unfit for judicial decision because each claim is contingent upon the outcome of litigation in other forums.

### a.   CCA's Pre-interpleader Claims

CCA's pre-interpleader claims for conversion, failure to exercise ordinary care and act in good faith, negligence, and money had and received are not fit for decision because each claim is contingent upon the arbitrator's future decision regarding which of the interpleader-defendants owns the Chase account proceeds.

Chase's claim for conversion alleges that by following AOR-OK and USON's instructions and diverting the proceeds of the Chase account into the USON account, Chase is liable to CCA for conversion under section 3.420 of the Texas UCC. See Tex. Bus. & Com. Code § 3.420. To recover on its claim for conversion under section 3.420 CCA must establish that neither AOR-OK nor USON were "entitled to enforce the instrument or receive payment" from the instruments deposited into the Chase account. See Tex. Bus. & Com.

Code § 3.420(a).  But that issue -- whether AOR-OK and USON are entitled to the Chase account proceeds -- is at the heart of the pending arbitration that this court ordered the parties to conduct.[47]  Thus, any decision from this court that Chase committed conversion by diverting the Chase account proceeds into the USON account could be rendered advisory if the arbitrator decided that AOR-OK and USON owned the Chase account proceeds.  In that event, AOR-OK and USON would have been entitled to enforce or receive payment on the instruments deposited into the Chase account, thereby negating one of the essential elements of CCA's claim for conversion under section 3.420.  Whether CCA can ever prevail on its conversion claim is thus speculative and contingent upon future events that may never happen, i.e., a favorable decision from the arbitrator.

CCA's second and third pre-interpleader claims against Chase ("failure to exercise ordinary care" and negligence) are unfit for decision for essentially the same reasons.  The gist of these two claims is that Chase breached its duty to exercise ordinary care by diverting the Chase account proceeds into the USON account without CCA's (but with AOR-OK's) authorization.[48]  As with its conversion

---

[47]Memorandum Opinion and Order granting Motion to Compel Arbitration, Docket Entry No. 87, pp. 10-12.

[48]See Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, pp. 24-25.

claim, in raising these two claims CCA presumes what the arbitrator has yet to decide -- that CCA owns the proceeds of the Chase account. A contrary decision from the arbitrator would nullify CCA's claims because it would be difficult, if not impossible, for CCA to prove that Chase either had or breached a duty to exercise ordinary care when diverting the Chase account proceeds to the USON account if in so doing, Chase was following the instructions of the proceeds' rightful owner.

A decision by the arbitrator that AOR-OK and USON owned the Chase account proceeds would also have a significant, if not dispositive, effect on CCA's pre-interpleader claim against Chase for money had and received. If the arbitrator decided that AOR-OK and USON owned the Chase account proceeds, CCA could not successfully establish its claim because a successful money-had-and-received claim would require proof "that a [Chase] holds money which in equity and good conscience belongs to [CCA]." Edwards v. Mid-Continent Office, 252 S.W.3d 833, 837 (Tex. App. -- Dallas 2008, pet. for review filed) (emphasis added). Accordingly, CCA's pre-interpleader claims are unfit for review.

b.  CCA's Post-interpleader Claims

Based on the foregoing analysis, the court has no trouble concluding that, like its pre-interpleader claims, CCA's post-interpleader claims for conversion, failure to exercise ordinary care and act in good faith, negligence, and money had and received

are unfit for review.  The gravamen of these post-interpleader claims is the same as those of CCA's pre-interpleader claims -- that by diverting the instruments that CCA owned into a USON account, Chase became liable to CCA for these several torts.[49]  But the issue of whether CCA owns the diverted instruments is pending in another forum.

Although CCA may be correct in arguing that its post-interpleader claims are not contingent upon the arbitration that the court ordered the parties to conduct,[50] CCA's post-interpleader claims are nevertheless unfit for decision because, as CCA further notes, "the entirety of the disputes between [the] interpleader defendants," which includes their more general dispute over who owns the allegedly diverted instruments,[51] is currently before the Oklahoma state court, and could later be decided by an arbitrator depending on the state court's decision on remand from the Oklahoma

---

[49]Id. ¶¶ 13-19 at pp. 21-23, ¶ 23 at p. 23, ¶ 30 at p. 25, ¶ 34 at p. 25, ¶ 38 at p. 26, ¶¶ 42-43 at pp. 26-27, ¶¶ 45-46 at p. 27, ¶ 49 at p. 28, ¶ 57 at p. 29.

[50]Response in Opposition to JPMorgan Chase Bank's Motion for Abatement Pending Resolution of Defendants' Arbitration Claims, Docket Entry No. 122, ¶¶ 10-12.

[51]See Reply Brief in Support of Motion to Compel, Docket Entry No. 68, Exhibit 1, CCA's Amended Petition, Oklahoma Oncology & Hematology PC, d/b/a Cancer Care Associates v. US Oncology Inc., No. CJ-2005-929 (D. Tulsa County, Okla. filed Feb. 14, 2005); see also Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, ¶ 14 at p. 13 ("[T]he issues before this Court as to the claims of AOR-OK and USON are identical to the claims in [the] pre-existing [state court] litigation.").

Supreme Court.[52]  Thus, at some future date, some tribunal other than this court could deny CCA's claim for declaratory relief and its claims for conversion and fraud (among others),[53] declare the MSA and power of attorney valid and enforceable, find for AOR-OK and USON, and hold that AOR-OK and USON are entitled to collect and enforce CCA-payable instruments, including those that form the basis of CCA's post-interpleader claims.  In that event, any decision from this court that Chase converted CCA's funds, failed to exercise ordinary care and act in good faith, or inequitably held money which in equity belonged to CCA would be advisory because each claim turns on the success of CCA's asserted ownership to the allegedly diverted instruments.

For the same reason CCA's post-interpleader claims for breach of fiduciary duty, fraud by omission, and tortious interference with existing contracts, are also unfit for decision by this court. CCA's claims for breach of fiduciary duty and fraud by omission both require CCA to prove that Chase breached a specific duty:  a fiduciary one, or a duty to disclose specific information, Bradford, 48 S.W.3d at 755.  Based on CCA's allegations, however, whether Chase breached these respective, assumed duties turns

---

[52]Response in Opposition to JPMorgan Chase Bank's Motion for Abatement Pending Resolution of Defendants' Arbitration Claims, Docket Entry No. 122, ¶¶ 11-12.

[53]See Reply Brief in Support of Motion to Compel, Docket Entry No. 47, Exhibit 1, CCA's Amended Petition, Oklahoma Oncology & Hematology PC, d/b/a Cancer Care Associates v. US Oncology Inc., No. CJ-2005-929 (D. Tulsa County, Okla. filed Feb. 14, 2005).

either directly or indirectly on the still pending determination of whether CCA owned the allegedly diverted instruments. Even if Chase is assumed to have owed CCA a fiduciary duty, it is difficult to understand how Chase would have breached that duty "by either transferring or depositing funds . . . directly into accounts owned by USON or USON-CORP,"[54] that CCA had no interest in. It is equally difficult to understand how Chase would have either owed or breached a duty to disclose the fact that Chase "was receiving checks made payable to CCA, but depositing said checks into an account owned by USON or USON-CORP,"[55] if USON was determined to be the rightful owner of those checks.

An adverse decision by the state court or arbitrator in the underlying state court litigation would also likely dispose of CCA's claim for tortious interference with existing contracts. If USON is determined to own the allegedly diverted instruments at issue, it is difficult to perceive how CCA could prove that by diverting instruments that USON owned, Chase willfully and intentionally interfered with CCA's existing contracts.[56] Moreover, a decision that USON owned the diverted instruments could also

---

[54]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, ¶ 38 at p. 26.

[55]Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion for Partial Dismissal, Docket Entry No. 134, p. 12.

[56]See Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 210 (Tex. 1996) (establishing the elements of a claim for tortious interference with existing contracts).

establish for Chase the complete defense of justification, which protects a party who acted within its legal rights, even on a good-faith basis, from liability.[57]   If in the underlying state court action USON is found to own the allegedly diverted instruments, USON was likely acting within its legal rights when it directed Chase to divert them to the USON account.   And if USON was acting within its legal rights, then so was Chase when it followed USON's instructions.

        c.   Conclusion as to Fitness

In short, CCA's ability to recover under either its pre- or post-interpleader claims turns upon a prerequisite and future determination -- i.e., which party owns the Chase account proceeds and diverted instruments -- that rests with tribunals in other forums.   Until that issue is decided by those tribunals, CCA's ability to recover on its claims for conversion, failure to exercise ordinary care, negligence, money had and received, tortious interference with existing contracts, breach of fiduciary duty, and fraud by omission remain speculative.   These claims are thus not fit for judicial decision but are instead fit for dismissal.

    2.  <u>Hardship to the Parties</u>

Although the lack of fitness of the issues for decision is alone a sufficient basis for dismissal, <u>see</u> <u>United Transp. Union</u>,

---

[57]<u>See</u> <u>id.</u> at 210-11.

205 F.3d at 857-58, the court also concludes that any hardship imposed by its decision to dismiss CCA's claims would be slight. CCA has not raised any facts in its filings with the court, and the record bears no indication, that an inability now to obtain relief from Chase in this action would result in an imminent hardship. Once CCA's claims ripen into an actual case or controversy, CCA will be free to obtain the relief it now seeks against Chase to the extent allowed by the facts and the law.  There is therefore no apparent or imminent hardship that would warrant the court's retention of jurisdiction over CCA's presently contingent and speculative claims.

**B.  CCA's Failure to State a Claim Upon Which Relief May Be Granted**

Because the court has concluded that it lacks subject matter jurisdiction over CCA's claims for conversion, failure to exercise ordinary care, negligence, money had and received, tortious interference with existing contracts, breach of fiduciary duty, and fraud by omission, the only claims that are subject to Chase's motion are CCA's claims for fraudulent misrepresentation and conspiracy.[58]

---

[58]These two claims are ripe for decision.  CCA's fraudulent misrepresentation claim is ripe because, as alleged by CCA, it does not turn on litigation in other forums, but on Chase's own actions, namely whether Chase knowingly and falsely represented that it would continue to pay all funds "payable to CCA" (but not necessarily owned by CCA) into the Court's registry.  In other words, CCA is alleging that Chase falsely and knowingly represented that it would enter all <u>disputed</u> funds into the registry as it had
(continued...)

1.   Dismissal of CCA's Claim for Fraudulent Misrepresentation
     for Failure to State a Claim under Federal Rule of Civil
     Procedure 9(b)

Chase argues that CCA's fraudulent misrepresentation claim should be dismissed because CCA failed to plead with specificity as required by Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that all allegations of fraud state "with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Failure to plead fraud with particularity under Rule 9(b) is regarded as a failure to state a claim upon which relief can be granted and is subject to dismissal under Rule 12(b)(6).  Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017 (5th Cir. 1996).  Rule 9(b) is interpreted strictly to require a claimant "pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  Herrmann Holdings Ltd. v. Lucent Tech. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks omitted).  "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent

_____

[58](...continued)
the Chase account proceeds.  The outcome of the arbitration or underlying state court action would not affect this claim because the claim does not necessarily turn on whether CCA owned the instrument in question.  Although CCA's claim for conspiracy, a derivative tort, could be unripe if attached to an unripe claim, it is not unripe here because it is attached to a ripe fraud claim.

-25-

intent will not satisfy Rule 9(b)."   <u>Melder v. Morris</u>, 27 F.3d 1097, 1102 (5th Cir. 1994).   "The plaintiffs must set forth <u>specific facts</u> supporting an inference of fraud."   <u>Id.</u>; <u>see also</u> <u>Greenstone v. Cambex Corp.</u>, 975 F.2d 22, 25 (1st Cir. 1992) ( "The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint <u>also</u> sets forth specific facts that makes it reasonable to believe that defendant knew that a statement was materially false or misleading." (emphasis in the original)). Moreover, while a claimant may base its fraud claim on information and belief when facts "are peculiarly within the opposing party's knowledge, . . . this luxury 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" <u>Tuchman v. DSC Communications Corp.</u>, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting <u>Wexner v. First Manhattan Co.</u>, 902 F.2d 169, 172 (2d Cir. 1990)).

CCA alleges that Chase committed fraud by representing that it "would continue to pay all funds payable to CCA into the registry of the Court" and made such representations "with knowledge of their falsity."[59]   CCA has not provided specific facts indicating that Chase knew these representations were false or misleading, or that would make such a belief reasonable.   Moreover, CCA fails to

---

[59]Defendant Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Second Amended Answer, Affirmative Defenses and Counterclaims, Docket Entry No. 130, ¶ 48 at p. 27.

meet the strictures of Rule 9(b) because its allegations lack facts indicating who made the allegedly false representations, or when and where those statements were made.  Accordingly, CCA has failed to state a claim of fraud (fraudulent misrepresentation).

2.   <u>Dismissal of CCA's Claim for Conspiracy</u>

Conspiracy is not a tort that is independently actionable; it requires the existence of another underlying tort or claim.  <u>Tilton v. Marshall</u>, 925 S.W.2d 672, 681 (Tex. 1996).  Because the court has dismissed all of CCA's other claims, CCA's claim for conspiracy will also be dismissed.  <u>See</u> <u>Ernst & Young, L.L.P.</u>, 51 S.W.3d at 583.

**C.   Leave to Amend**

In the last line of the last paragraph of its response, CCA requested leave to amend its counterclaims "only in the event that this Court dismisses some of CCA's Amended Counterclaims[.]"[60]  This is not CCA's first request to amend its counterclaims; the court already granted CCA leave to amend.[61]  Instead of moving to amend its counterclaims and providing the court with its proposed amended counterclaims as it had before, CCA merely tacked a general

---

[60]Oklahoma Oncology & Hematology, P.C. d/b/a Cancer Care Associates' Response in Opposition to Motion for Partial Dismissal, Docket Entry No. 134, pp. 14-15.

[61]Order granting Motion to Amend Counterclaims, Docket Entry No. 129.

curative request to amend onto the end of its response in opposition to Chase's motion to dismiss. Under these circumstances the court is not persuaded that CCA should receive another opportunity to plead its claims, especially given that this litigation has been ongoing since 2006 and that CCA has already had an opportunity to amend its claims. See <u>McKinney v. Irving Indep.</u> <u>School Dist.</u>, 309 F.3d 308, 315 (5th Cir. 2002) (finding no abuse of discretion in the district court's denial of request for leave to amend where the plaintiffs failed to submit a proposed amended complaint together with a request for leave to amend and failed to alert the court to the substance of any proposed amendment). Accordingly, CCA's request for leave to amend will be denied.

## IV.  <u>Conclusion and Order</u>

Based on the foregoing analysis, Count One (conversion), Count Two (failure to exercise ordinary care and act in good faith), Count Three (negligence), Count Four (breach of fiduciary duty), Count Five (money had and received), Count Six (tortious interference with existing contracts), and Count Seven (fraud by omission) are **DISMISSED without prejudice** for lack of subject matter jurisdiction.  Chase's Motion for Partial Dismissal and Brief in Support (Docket Entry No. 131) is **GRANTED in part**, and Count Seven (fraudulent misrepresentation) is **DISMISSED with prejudice**, while Count Eight (conspiracy) is **DISMISSED without**

**prejudice**.  CCA's request for leave to amend, made in its Response in Opposition to Motion for Partial Dismissal (Docket Entry No. 134), its Motion for Extension of Scheduling Order Deadlines, Motion for Protection and Request for Expedited Consideration (Docket Entry No. 136), and its Second Motion to Modify Scheduling Order (Docket Entry No. 141) are **DENIED**.  The only remaining claim is Chase's Original Complaint for Interpleader (Docket Entry No. 1).  Given the court's rulings, all of the issues raised by that complaint may be the subject of the parties' arbitration.  The parties are **ORDERED** to file and deliver to chambers a joint status report no later than September 5, 2008, and every thirty days thereafter informing the court -- with specificity -- of the status of the pending arbitration and the state court action.

　　　　**SIGNED** at Houston, Texas, on this 25th day of August, 2008.

_____
　　　　　SIM LAKE
UNITED STATES DISTRICT JUDGE